# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ESTATE OF LAURA ALLISON, et al, § | |
| § | |
| Plaintiffs, § | |
| § | |
| vs. § | CASE NO. 6:11-CV-100 |
| § | |
| WOOD COUNTY, TEXAS, et al, § | |
| § | |
| Defendants. § | |
| § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Docket No. 37). For the reasons stated below, the Court **DENIES** the Motion.

## BACKGROUND

Decedent Laura Allison was arrested for public intoxication and taken to the Wood County Jail on March 17, 2009 at approximately 6:47 p.m. The arrest report states Allison "had been drinking and stated took prescription meds not in accordance with direction." *See* Docket No. 40, Ex. 1. Arresting Officer Barkely's report states that at the time of Allison's arrest, he noticed an odor of alcohol, her eyes were bloodshot and droopy, her speech was slurred, and she was confused. Allison failed a field sobriety test, and Officer Barkley reported that she was unsteady on her feet. Officer Barkley repeatedly asked Allison if she was diabetic or had any other medical conditions, to which she stated, no. Upon failing the field sobriety test, Officer Barkley placed Allison under arrest. Officer Barkley's probable cause affidavit states that Allison smelled of alcohol, reported

having taken prescription meds not in accordance with direction, and posed a threat to herself and others.

However, when Allison arrived and was booked-in, Defendant Hayes answered "no" to the staff observation "observed to be under the influence of alcohol drugs or withdrawals?" *See id.* at Ex. C, 40. Defendant Hayes' report and statement indicate that Allison was asked about what medicines she was taking, and she reported Paxil and Diazepam. Allison answered "no" to each of the medical questions she was asked. *Id*. at 45. Defendants collectively contend that at no time did Allison give any indication that she needed medical attention.

Allison was placed alone in a cell, and various defendants reportedly walked by her cell every thirty minutes to check on her. At approximately 9:00 p.m., Allison's husband came to the jail and asked to speak with Allison. *See* Docket No. 37 at 7 (citing Dean Depo). Allison's husband brought some of Allison's medicine with him and told Mr. Dean that Allison might have taken something, but he did not know what it was. *Id*. Defendants were unable to rouse Allison to go speak to her husband when he arrived at the jail. Allison merely moaned and mumbled. Defendant Dean asked Allison's husband to wait at the jail so he could talk to him, but Allison's husband left. *Id*. Dean states that he reported this incident to Srgnt. Hayes, and they closely monitored Allison for the rest of the evening. Docket No. 40, Ex. 3 at 6 (report of Dean).

At approximately 11:15 p.m., Defendant Hayes looked in Allison's cell and could not tell if she was breathing. Docket No. 37 at 8. Hayes asked Officer Zeller to enter the cell and they tried to wake Allison. Docket No. 40, Ex. 3 at 7 (report of Zeller). Neither officer could wake Allison, and they presumed her dead. Officer Hayes states that he called Captain Clanton, dispatch was

advised, and they called CID and Sheriff Wansley. *Id*. Ex. 3, p. 45, Incident History Report by David Hayes.

It is undisputed that no medical person ever saw Allison from the time she arrived until the time she was presumed dead at 11:18 p.m. The ambulance arrived shortly after midnight. It is undisputed that Allison died of acute ethanol poisoning.

## APPLICABLE LAW

### *Summary Judgment Standard*

Summary judgment is proper only if the movant establishes that there is no genuine issue as to any material fact, thus entitling the moving party to judgment as a matter of law. FED. R. CIV. P. 56(c). A material fact creates a genuine issue if the trier of fact reasonably could resolve the factual dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248–49 (1986).

An order denying summary judgment is ordinarily not immediately appealable. However, "the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate appeal." *Brown v. Strain*, 663 F.3d 245, 247 (5th Cir. 2011). The order is only appealable to the extent the Court's order turns on an issue of law. *Id*.

### *Section 1983 Claim- Individual Defendants*

To prevail on a claim for deprivation of medical care, a plaintiff must prove that care was denied and that such denial constituted a "deliberate indifference to serious medical needs, constituting unnecessary and wanton infliction of pain." *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Both parties acknowledge that the deliberate indifference standard applies. *See* Docket

No. 37 at 11; *see also* Docket No. 40 at 25. To state a viable claim against an individual under that standard, Plaintiffs must establish that Defendants "acted with subjective deliberate indifference to [Allison's] need for medical care." *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009). Plaintiffs must present evidence: "(1) that [Defendants] had 'subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn'; (2) that [Defendants] actually drew that inference; and (3) that [Defendants'] response to the risk indicates that [they] subjectively intended that the harm occur." *Jennings*, 644 F.3d at 249.

A sheriff not personally involved in the acts that deprived a plaintiff of his constitutional right will be liable under section 1983 if: (1) the sheriff failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upsher County*, 245 F.3d 447, 459 (5th Cir. 2001).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is greater than mere negligent medical care. *Farmer*, 511 U.S. at 835; *see Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action.") (abrogated on other grounds).

***Qualified Immunity***

Defendants contend that even if they violated Allison's constitutional rights, the individual

4

defendants are entitled to judgment as a matter of law on the basis of "qualified immunity." "Qualified immunity" shields governmental officials performing discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine is generally available to governmental officials sued under section 1983 in their individual capacity. *Johnston v. City of Houston*, 14 F.3d 1056,1959 (5th Cir. 1994). A plaintiff has the burden of demonstrating the inapplicability of the qualified immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To determine whether Defendants are entitled to qualified immunity, courts inquire: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct." *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

***Section 1983 Claim- Municipal Liability***

A plaintiff seeking to impose liability on a municipality under section 1983 must identify a municipal policy or custom that caused plaintiffs' injury. *Goodman v. Harris County, Texas*, 571 F.3d 388, 396 (5th Cir. 2009). A "policy" can be a policy statement, ordinance, regulation or decision officially adopted and promulgated by the county's officers. *Monell v. New York Dept of Social Servs*, 436 U.S. 658, 690 (1978). A "custom" is a persistent, widespread practice of county officials or employees which, although not formally adopted, is so common and well-settled that it

fairly represents county policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

## ANALYSIS

Applying the law to the set of facts presented, the Court identifies a multitude of key factual disputes between the parties that prevents a grant of summary judgment.

***The Individual Jailer Defendants***

<u>Section 1983 Claim</u>

With regard to the 1983 claim, Defendants first argue that they presented uncontroverted summary judgment evidence that none of the individual jailer defendants treated Allison's serious medical needs with deliberate indifference. Docket No. 37 at 14. Defendants argue that deliberate indifference requires a showing that defendants knew that Allison faced a substantial risk of harm and disregarded the risk by failing to take reasonable measures to abate it. *Id*. citing *Farmer*, 511 U.S. at 847. Defendants argue that Allison never complained to any defendant about her medical condition and she never asked for medical care. Further, defendants contend Allison's behavior and demeanor never indicated that she needed medical care. Defendants assert that Allison was checked on frequently, and that summary judgment evidence shows that no defendant knew of, but disregarded any facts which would have created a risk that Allison's rights would be treated with deliberate indifference. *Id*. at 16.

Plaintiffs respond with conflicting summary judgment evidence on the issue of Defendants' knowledge regarding Allison's medical condition. First, though Defendants assert in their motion for summary judgment that Officer Barkley never told anyone of Allison's condition, Barkley's arrest report and probable cause affidavit–both available at book-in–indicated that Allison smelled

6

of alcohol, had bloodshot and droopy eyes, slurred her speech, was unsteady and swaying on her feet, and was confused. These documents also noted that Allison reported taking prescription medicine not according to direction. Barkley's affidavit states that Allison presented an immediate danger to herself. Second, Allison's husband arrived at the jail and reported to Defendant Dean that Allison may have taken something, but he was not sure what. When Dean reported this to Hayes, Hayes told Dean to "keep a close eye on her." Docket No. 37, Ex. D at 13. When defendants tried to wake Allison to tell her that her husband was here, Allison merely moaned and mumbled and could not get up. Though Defendants argue that at that time, they still did not believe Allison needed medical attention, Defendant Hayes acknowledged that this caused him enough concern that he went by to check to make sure Allison was still breathing. *Id.* Ex. E at 20. Defendants' counsel further stated at the hearing on this motion that after this point, checks on Allison were as frequent as every 15 minutes. If there was not a serious concern regarding her medical condition, breathing checks every 15 minutes would not have been necessary.

Third, evidence shows that defendants dispute Allison's condition among themselves. For example, Defendant Hyatt states that she watched Allison from 7 p.m.-8:30 p.m. and she seemed okay. Doc. 40, Ex. 3 at 6. However, jail records show that Jailer Michael Allison noticed decedent Allison appeared to be passed out around 8 p.m. and he asked Defendant Zeller if Allison was drunk or just messed up on pills. *See id.* Ex. 3 at p. 4; Allison Depo. P.7. Finally, evidence shows that the officers never offered Allison any medical care. No one sought medical care when Allison arrived and the book-in information showed that she had been drinking and had taken prescription medicine not in accordance with the directions. No one sought medical care when Defendants were unable

7

to rouse Allison after her husband arrived. No one tried to resuscitate Allison when she was found not breathing and with no pulse. None of the jailers actually called the EMS when they found Allison not breathing and with no pulse. Instead, Sgt. Hayes called dispatch and the captain, and the ambulance arrived almost 45 minutes after Allison was found not breathing. Docket No. 40, Ex. 10 at 4–8 (Deposition of Hayes).

Plaintiffs have submitted sufficient evidence for a reasonable jury to find that the individual jailer defendants acted with deliberate indifference to Allison's rights. Plaintiff has established (and defendants conceded at the hearing) that a detainee suffering from a serious medical need is constitutionally entitled to medical care. Plaintiffs have also established that Allison was suffering from a serious medical need, i.e. alcohol poisoning which led to her death just hours after arriving at the jail. Thus, the decision of whether defendants acted with deliberate indifference turns on whether Defendants actually knew of Allison's condition and need for medical care, but ignored her need. If Defendants knew of Allison's need for medical care, but refused to provide care, their actions would amount to deliberate indifference because Defendants would have deliberately ignored the obvious risk to Allison. However, if Defendants did not know of Allison's medical need, then their actions were not deliberately indifferent to Allison's rights. Ultimately, defendants' states of mind are questions of fact for the fact-finder, and based on the evidence presented, a rational jury could find that Defendants knew Allison was in need of medical care, but did nothing. As a result, the individual jailer defendants are not entitled to summary judgment on Plaintiffs' personal capacity claim against them.

*Qualified Immunity*

Defendants' argument that they are entitled to qualified immunity results in the same conclusion because the question of qualified immunity will also turn on the fact issue of whether Defendants had knowledge that Allison was suffering from a serious medical condition. Although the issue of qualified immunity is typically a question of law, when the issue turns on key factual disputes—as it does here—a grant of summary judgment based on qualified immunity is improper.

The right at issue–to receive medical care during confinement–was clearly established at the time of Defendants' alleged misconduct. *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011); *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir. 2001). It is undisputed that Allison, a detainee, had this clearly established constitutional right when suffering from a serious medical condition. Thus, the issue turns on whether the defendants' actions were objectively reasonable. *Thompson*, 245 F.3d at 459.

Plaintiffs put forth evidence, as did Defendants, that Wood County has at least a general policy of requiring its jailers to obtain medical care for its detainees when needed.[1] *See* Docket No. 40, Ex. 9 at 3–5 (Deposition of Wansley). Thus, if Defendants had knowledge that Allison needed medical care, then they were required to provide such care. No reasonable officer who knew that Allison needed medical care, would refuse to give her such care in face of a policy requiring him to do so. Thus, Defendants' failure to provide such care would be objectively unreasonable in light of established law. However, if Defendants had no knowledge that Allison needed medical care, then they might be entitled to qualified immunity because their actions were not objectively unreasonable

---

[1] The sufficiency of that policy is further discussed below. However, this statement is true regardless of whether the Court relies on Sheriff Wansley's report of the policy or Plaintiffs' position regarding the policy.

under the circumstances. Because the issue of whether Defendants acted in an objectively reasonable manner turns on a fact dispute, Defendants' motion must be **DENIED**.

*Defendant Sheriff Wansley*

It is undisputed that Sheriff Wansley did not have any personal contact with Allison, did not give any orders regarding Allison, and did know not that she was in jail. Though not directly involved, Wansley may still be held liable if: (1) the sheriff failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of [decedent's] rights; and (3) failure to train or supervise constituted deliberate indifference to the [decedent's] constitutional rights. *Estate of Henson v. Callahan*, 440 Fed. Appx. 352 (5th Cir. 2011) (quoting *Thompson*, 245 F.3d at 449). In order to show Sheriff Wansley's failure to supervise/train amounted to deliberate indifference, Plaintiffs must produce some evidence that either there was a high probability that the failure to train would lead to Allison's specific injury or that Sheriff Wansley was responsible for a pattern of inadequate training sufficient to support the inference that he was deliberately indifferent to detainees' rights. *Thompson*, 245 F.3d at 459. Wansley may also be liable as a supervisor if he "implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.*.

Defendants argue that Sheriff Wansley was not deliberately indifferent to the training and supervision of his employees. Defendants point to summary judgment evidence that Sheriff Wansley's policy was to constantly train the employees to get inmates help whenever the need arises, and the training is reinforced on a daily basis. *See* Docket No. 37 at 22 citing Wansley Depo.

10

Plaintiffs respond by pointing to the following: (1) Sheriff Wansley testified that he is responsible for seeing that inmates are provided with medical care; (2) Sheriff Wansley acknowledged that mixing alcohol and medicine could have a bad effect and "raised a red flag", (3) Wansley left the decision of whether and when to contact medical personnel in situations like Allison's up to the discretion of the jailers on duty; (4) Wansley knew that most jailers are not trained in CPR or basic lifesaving measures, and (5) there was no medical staff at the jail at night. *See* Docket No. 37, Ex. 9, Wansley Depo. Plaintiffs also note that there have been 3 jail deaths since 2006.

Again the issues of training and supervision turn on genuine issues of material fact, including the knowledge of the individual jailer defendants. If the individual jailer defendants knew of and recognized Allison's condition and need for medical care, but refused to give her such care, then it is the individual jailer defendants who are at fault because they ignored Wansley's stated training of giving detainees medical care whenever they needed it.

However, if defendants did not know of Allison's condition or need for medical care, then fact issues remain as to: (1) the adequacy of Wansley's training regarding recognizing a serious medical need; (2) his implementation of Wood County's policies of not providing medical personnel on site at night who are able to recognize that need; and (3) whether an inadequacy amounted to deliberate indifference. Thus, Wansley's motion for summary judgment regarding deliberate indifference is **DENIED**.

Nor is Sheriff Wansley entitled to qualified immunity as a matter of law. If the jailer defendants knew of Allison's condition and serious medical need, but failed to provide her medical care, they were acting in direct contradiction to Wansley's stated training and Wood County's

policies. Thus, Wansley's training would be objectively reasonable and he would be entitled to qualified immunity. However, if Plaintiffs' facts as to Allison's behavior and symptoms are true, but the jailer defendants did not realize that Allison had a serious medical need, then Wansley's training of the defendants or policy of having no medical staff on duty is objectively unreasonable. Because all reasonable sheriffs would recognize the unconstitutionality of failing to instruct their employees to impose medical care when a detainee exhibits Allison's symptoms and reports taking prescription drugs not in accordance with direction, Sheriff's Wansley's training/supervision was objectively unreasonable and he would not be entitled to qualified immunity. Thus, because the decision of qualified immunity again turns on a fact issue, the motion must be **DENIED**.

*Defendant Wood County*

Finally, defendants argue that even if a genuine issue of material fact exists as to whether Allison's serious medical needs were treated with deliberate indifference, Wood County would still be entitled to summary judgment because there is no summary judgment evidence that any such deliberate indifference was the result of the County's policy, custom or practice. Docket No. 37 at 18. Defendants offer summary judgment evidence that Wood County has a policy, custom or practice of making sure that inmates get medical treatment for any reason. *Id*. Citing various depositions. However, Plaintiffs presented summary judgment evidence that it is Wood County's custom or policy to have no medical staff on duty at night, and to allow the jailers on duty to use their discretion in determining whether a detainee needs medical help despite the fact that most jailers are not trained in CPR or even basic lifesaving measures. *See* Docket No. 40, Exhibit 9 at 2–3

Accordingly, Plaintiffs have raised a fact issue as to whether Wood County's policies or

customs (or lack thereof) resulted in Allison's medical needs being treated with deliberate indifference. Defendants' motion with respect to Wood County is **DENIED**.

## CONCLUSION

Accordingly, because Plaintiffs have raised a genuine issue of material fact as to whether each of the Defendants is entitled to summary judgment, the Court **DENIES** Defendants' motion.

**So ORDERED and SIGNED this 3rd day of July, 2012.**

*[signature]*

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**